**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jade Waichulaitis, et al., | No. CV-25-00900-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Michael Sloat, et al., | |
| Defendants. | |

Pending before the Court is Defendants City of Chandler (the "City"), Lydia Ravelo, Matthew Loper, Matthew Figley, Hiago Pereira, and Ryan Stover's (collectively, the "City Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") (Doc. 29). The Motion has been fully briefed. For the following reasons, the Court **grants in part** Defendants' Motion.

## I.    BACKGROUND

This case stems from Plaintiff Jade Waichulaitis' ("Jade") allegation that he was falsely arrested and charged with aggravated assault. (Doc. 17 at 3 ¶ 11.) The FAC alleges the following. On April 17, 2024, Jade observed Defendant Michael Sloat ("Sloat") stealing a gas can from his driveway. (*Id.* at 5–6 ¶ 30.) Jade did not know Sloat at that time. (*Id.* at 6 ¶ 30.) Jade confronted Sloat, who subsequently recorded Jade with his phone. (*Id.*) Jade attempted to grab the phone. (*Id.* ¶ 31.) Sloat then attacked Jade while holding the gas can. (*Id.* ¶¶ 31–32.) During the altercation, Jade tried to retrieve the gas can from Sloat, but the cap came lose spilling gas on Jade and Sloat. (*Id.* ¶ 32.)

As Jade backed towards his front door, Sloat followed him. (*Id.* ¶ 33.) Jade then "acted in self-defense against [Sloat] to protect his house." (*Id.*) Sloat and Jade disagreed as to whether Jade used a rock in self-defense or produced a lighter during the altercation. (*Id.* ¶ 34.) Jade incurred multiple bruises and a cut on his forehead. (*Id.* ¶ 36.)

Jade told his mother, Sharon Waichulaitis ("Sharon") to call the police because he had been punched by Sloat. (*Id.* at 4 ¶ 19.) Jade was not present when Officers Ravelo, Loper, and Figley of the Chandler Arizona Police Department arrived at the house. (*Id.* at 4 ¶¶ 17, 19, 5 ¶ 28.) Sloat told the police that Jade had attacked him. (*Id.* at 3 ¶ 13.) Sloat said he went onto Jade's property to get his phone but tackled Jade after Jade called Sloat "a name" and doused him with gasoline. (*Id.* at 3 ¶ 16, 5 ¶ 29.)

Officer Figley gave Sharon a report number and instructed her to have Jade contact police "in order to get his side of the story." (*Id.* at 4 ¶ 21.) However, Officer Ravelo immediately put out an "attempt to locate" for Jade "to arrest him for probable cause for aggravated assault." (*Id.* ¶ 18.)

Later that night, an "Immediate Action Team" ("IAT")[1] "was formed in front of Waichulaitis' residence and another IAT was formed in the backyard of the rear of the neighbor's home in an attempt to arrest Jade." (*Id.* at 5 ¶ 24.) Jade was arrested after he "briefly ran from police." (*Id.* ¶ 26.) Officer Stover "used his rifle to arrest Jade" and other officers pointed guns at him with "night scopes/lights." (*Id.* at 5 ¶ 26, 10 ¶ 51.)

Jade was charged with aggravated assault, disorderly conduct, and criminal damage. (*Id.* at 3¶ 11; 7 ¶ 38.) After the arrest, Officer Ravelo submitted a "false or misleading Form IV/release questionnaire" that did not include Jade's version of events.[2] (*Id.* at 3 ¶ 13, 5 ¶ 10.) Additionally, it is alleged that Officer Pereira falsified his police report by providing that Jade caused "substantial damage to the right rear patrol vehicle's door" by

---

[1] The FAC also alleges that a "SWAT team" was used to arrest Jade. (Doc. 17 at 3 ¶ 11.) It is unclear what the distinction—or relationship—is between the IAT and the SWAT team.

[2] A Form IV outlines details of an arrest, including "facts which establish probable cause for the crime(s) for which the defendant is booked or is charged." *See* Ariz. R. Crim P. Form 4(a). A "Form IV" is a form completed by police and used by Arizona courts *See* Ariz. R. Crim. P. 41

kicking it despite there being "no significant damage to the police vehicle." (*Id.* at 7 ¶¶ 37–38.) Jade spent ten days in jail before the charges were dismissed. (*Id.* at 8 ¶ 42.)

Jade, Sharon, and Jade's father, Bruce Waichulaitis ("Bruce") (collectively, "Plaintiffs") now bring a panoply of state and federal claims against Sloat, the City, and Officers Ravelo, Loper, Figley, Pereira, and Stover. The present Motion only seeks dismissal of the claims brought against the City and Officers Ravelo, Loper, Figley, Pereira, and Stover (collectively, the "City Defendants"). This Order collectively refers to Officers Ravelo, Loper, Figley, Pereira, and Stover as the "Officer Defendants."

## II.    LEGAL STANDARD

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'"

*Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.    DISCUSSION

At the outset, the Court addresses Plaintiffs' repeated insistence that dismissal is inappropriate because discovery is necessary to substantiate their claims.  (Doc. 34 at 1, 2, 8–9, 16–17.)  Of course, the nature of some claims makes it difficult to provide sufficient details at the pleading stage.  *See, e.g.*, *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994) (noting that it is often impossible to provide details of a conspiracy claim at the pleading stage, thus necessitating discovery).  All the available evidence is not always available at the pleading stage—that is the purpose of discovery.  *See Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655 (C.D. Cal. 2005) ("Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.").  However, this understanding is baked into the pleading standard; claimants must only include enough factual detail to make their claim *plausible*—not certain.  *Iqbal*, 556 U.S. at 678.  While the nature of the underlying claim might affect what constitutes sufficient factual detail, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are never sufficient.  *Id.*  Accordingly, Plaintiffs are not exempted from Rule 8's requirements

1   merely because they want discovery.

2       The Court also cautions Plaintiffs against "shotgun pleading." *Shumlich v. U.S.*

3   *Bank, N.A.*, No. 2:24-CV-01681-MJP, 2025 WL 19871, at *2 (W.D. Wash. Jan. 2, 2025)

4   ("Pleadings that seek to overwhelm defendants with an unclear mass of allegations and

5   make it difficult to impossible for the defendants to make informed responses to the

6   plaintiff's allegations are considered shotgun pleadings." (citation modified)).  Complaints

7   may be considered impermissible shotgun pleadings if they merely set forth "everyone did

8   everything" allegations or "simply incorporat[e] every antecedent allegation by reference."

9   *Id.* (citation modified); *see Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).  Shotgun

10  pleadings risk dismissal under Rule 8(a)(2).  *See A.B. v. Hilton Worldwide Holdings Inc*,

11  484 F. Supp. 3d 921, 943 (D. Or. 2020).  Here, Plaintiffs assert blanket claims against

12  groups of defendants, rarely attributing particular actions to particular Defendants.  This

13  pleading "strategy" makes it difficult for the Court to properly assess the adequacy of

14  Plaintiffs' allegations.  The Court now turns to the sufficiency of Plaintiffs' eleven causes

15  of action.

16      **A.  False Arrest, False Imprisonment, and Malicious Prosecution**

17      The FAC includes a claim for false arrest in violation of 42 U.S.C. § 1983 by Jade

18  against the Officer Defendants.  (Doc. 17 at 17.)  The FAC also includes state law claims

19  for false imprisonment and malicious prosecutions by Jade against the City Defendants.

20  (*Id.* at 14–15.)  The Court analyzes these claims together because there was probable cause

21  to arrest and prosecute Jade—a complete defense to these claims.[3]

22          1.  *False Arrest (42 U.S.C. § 1983)*

23      The Court begins by analyzing Jade's § 1983 false arrest claim.  Section 1983

24  provides that "[e]very person who, under color of any statute, ordinance, regulation,

25  custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the

---

26  [3]  Plaintiffs insist that "probable cause is a factual issue" which requires discovery.  (Doc.
27  34 at 7.)  They are mistaken.  "[T]he question of whether a reasonable officer could have
    believed  probable  cause  (or  reasonable  suspicion)  existed  to  justify  an  arrest  is  an
28  essentially legal question that should be determined by the district court at the earliest
    possible point in the litigation."  *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.
    1993) (citation modified).

United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the government?" *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) (citation modified). To state a § 1983 claim, "a plaintiff must 'plead that (1) the defendants acted under color of state law and (2) deprived plaintiff of rights secured by the Constitution or federal statutes.'" *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). It is undisputed that the Officer Defendants were acting under the color of state law.

"A claim for [false] arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). Thus, Plaintiffs are required to demonstrate that Jade was arrested without probable cause. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). Plaintiffs fail to do so.

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Importantly, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer *at the time of the arrest*." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (emphasis added). Additionally, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* at 153. The FAC establishes that there was probable cause to arrest Jade for any number of crimes.

Prior to the arrest, Sloat informed police that Jade attacked him with a rock and doused him with gasoline. (Doc. 17 at 3 ¶ 13, 4 ¶ 16, 5 ¶ 27.) By the time police became

involved, Sloat was visibly injured and Jade was not present. (*Id.* at 4 ¶ 17, 5 ¶ 28, 7 ¶ 40.) Furthermore, Jade ran from police when they attempted to arrest him. (*Id.* at 5 ¶ 26.) These facts are sufficient to establish that there was probable cause to arrest Jade.

Plaintiffs' arguments to the contrary are unavailing. At bottom, Plaintiffs contend that further investigation disproved many of the facts that gave rise to probable cause. (Doc. 34 at 8.) Specifically, Plaintiffs argue that Jade was arrested for assault with a deadly weapon "yet further investigation revealed that no rocks were found." (*Id.*) Additionally, Plaintiffs argue that the Form IV and police report "show numerous inconsistencies and blatantly false claims." (*Id.*) These arguments errantly rely on information made available *after* the arrest, not "at the time of the arrest." *Devenpeck*, 543 U.S. at 152.

Disproving facts used to form probable cause after an arrest does not make the probable cause determination unreasonable in the first instance. *See District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) ("To determine whether an officer had probable cause for an arrest, we examine the events *leading up to* the arrest, and then decide whether these *historical facts*, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." (emphasis added) (citation modified)). This conclusion is in harmony with the understanding that probable cause demands objective reasonableness, not perfection. *See Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (noting that the "touchstone of the Fourth Amendment is reasonableness" and that "[t]o be reasonable is not to be perfect" (citation modified)). As the Supreme Court noted, "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *Wesby*, 583 U.S. at 61. Much less are officers required to do so when a suspect's first encounter with the police is evading arrest. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that "unprovoked flight upon noticing the police . . . is a pertinent factor in determining reasonable suspicion"). The *Wesby* Court went on to note that "innocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect." 583 U.S. at 68. This accords with the understanding that probable cause is "a fluid concept—turning on the assessment of probabilities in particular

1    factual contexts." *Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003) (quoting *Illinois v.*
2    *Gates*, 462 U.S. 213, 232 (1983)).

3        Accordingly, the Court **dismisses** with prejudice Jade's § 1983 false arrest claim
4    against the Officer Defendants.

5                                    2.  *False Imprisonment*

6        The foregoing analysis also demands dismissal of Jade's false imprisonment claim
7    under state law.  To establish false imprisonment under Arizona law, a plaintiff must show
8    that they were unlawfully detained "without his consent and without lawful authority."
9    *Cullison v. City of Peoria*, 584 P.2d 1156, 1160 (Ariz. 1978).  However, "a detention which
10   occurs pursuant to legal authority . . . is not an unlawful detention."  *Id.*  Accordingly,
11   "[p]robable cause is a complete defense to an action for false arrest or false imprisonment."
12   *Dunn v. Hyra*, 676 F. Supp. 2d 1172, 1196 (W.D. Wash. 2009); *see Hansen v. Garcia*, 713
13   P.2d 1263, 1265 (Ariz. Ct. App. 1985) (noting that a summary judgment should be granted
14   on false imprisonment claims where an arrest was legal and made with probable cause).

15       Plaintiffs argue that Jade was falsely imprisoned because "police did not conduct an
16   investigation and instead of waiting for Jade to contact them, they initiated a nighttime
17   arrest with rifles, flashlights and frightening police action." (Doc. 17 at 14 ¶ 76.)  Plaintiffs
18   further contend that "Jade was not only arrested but he was kept in jail for a week."  (*Id.*)

19       These arguments fail to establish that police did not have probable cause "at the time
20   of the arrest."  *Devenpeck*, 543 U.S. at 152.  Plaintiffs do not point to any authority that
21   required police to "wait[] for Jade to contact them."  Indeed, there are no facts indicating
22   that it was unreasonable for police to accept Sloat's version of events at the time of the
23   arrest.  Again, "probable cause does not require officers to rule out a suspect's innocent
24   explanation for suspicious facts."  *Wesby*, 583 U.S. at 61; *Slade v. City of Phoenix*, 541
25   P.2d 550, 553 (Ariz. 1975) ("Police depend upon the information furnished by citizens,
26   and, unless the contrary appears, they should be able to depend upon the presumption that
27   men speak the truth.").  Broadly, Plaintiffs fail to allege that police lacked lawful authority
28   to arrest Jade.

1   Accordingly, the Court **dismisses** with prejudice Jade's false imprisonment claim

2   against the City Defendants.

3   3. *Malicious Prosecution*

4   Finally, the Court turns to Jade's state law claim of malicious prosecution. "[T]he

5   essential elements of an action for malicious prosecution are 1) a criminal prosecution,

6   2) that terminates in favor of plaintiff, 3) with defendants as prosecutors, 4) actuated by

7   malice, 5) without probable cause and 6) causing damages." *Cullison*, 584 P.2d at 1160.

8   "The key element of malicious prosecution is malice, which can be inferred from a lack of

9   probable cause." *Id.* Thus, "the existence of probable cause to institute an action is a

10  complete defense to malicious prosecution." *Id.*

11  "In the context of malicious prosecution, probable cause is defined as a reasonable

12  ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent

13  man in believing the accused is guilty of the offense." *Gonzales v. City of Phoenix*, 52

14  P.3d 184, 187 (Ariz. 2002) (citation modified). "The test generally applied is: upon the

15  appearances presented to the defendant, would a reasonably prudent man have instituted

16  or continued the proceeding?" *Id.* (quoting *McClinton v. Rice*, 265 P.2d 425, 431 (Ariz.

17  1953)). Here, Jade was charged with aggravated assault, disorderly conduct, and criminal

18  damage. (Doc. 17 at 3¶ 11, 7 ¶ 38.) The FAC and incorporated documents establish that

19  there was probable cause to prosecute Jade for each crime.[4]

20  a. Aggravated Assault

21  There was probable cause to prosecute Jade for aggravated assault. Under Arizona

22  law, a person commits criminal assault by: (1) "[i]ntentionally, knowingly or recklessly

23  causing any physical injury to another person"; (2) "[i]ntentionally placing another person

24  in reasonable apprehension of imminent physical injury"; or (3) "[k]nowingly touching

25  another person with the intent to injure, insult or provoke such person." Ariz. Rev. Stat.

26

---

27  [4]   As noted, "[a] court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."

28  *Ritchie*, 342 F.3d at 908. The FAC relies heavily on the Form IV, Officer Pereira's police report, and other documents relating to Jade's prosecution.

§ 13-1203(A)(1)–(3).  Criminal assault becomes aggravated assault "[i]f the person uses a deadly weapon or dangerous instrument."  Ariz. Rev. Stat. § 13-1204(A)(2).  Jade was charged with using a rock as a deadly weapon.[5]  (Doc. 29-5 at 3.)

The Court already relayed those facts in the FAC which supported the existence of probable cause to arrest Jade.  Based on these facts, a reasonable person would institute an aggravated assault proceeding against Jade.  Again, Sloat, who was visibly injured, informed police that Jade attacked him with a rock, doused him with gasoline, and attempted to evade arrest.  (Doc. 17 at 3 ¶ 13, 4 ¶ 16, 5 ¶¶ 26–27, 7 ¶ 40.)  This information was also relayed by Officer Ravelo in the Form IV, which states Sloat had "injuries from the gasoline on skin.".  (Doc. 29-2 at 2–3.)  The Form IV was completed after the arrest.  (Doc. 29-2 at 2.)

Plaintiffs argue that the Form IV cannot establish probable cause to prosecute Jade for aggravated assault because it contains false information.  (Doc. 34 at 7.)  Plaintiffs primarily contend that Officer Ravelo was aware of Jade's version of events when she filed out the Form IV but failed to include those details.  (Doc. 17 at 5.)  However, Plaintiffs do not cite any authority suggesting that a suspect having a different version of events is sufficient to eliminate a finding of probable cause.  Of course, such a rule would be utterly impracticable.  Nor do Plaintiffs point to any facts suggesting that it was patently unreasonable for police to rely on Sloat's version of events.

Of course, "an officer may not ignore exculpatory evidence that would negate a finding of probable cause." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (citation modified).  However, Jade's protestations do not negate a finding of probable cause because "[t]he mere existence of some evidence that could suggest self-defense does not negate probable cause." *Id.*  Ultimately, Plaintiffs fail to plead any facts that demonstrate that the officers' first-hand observations and Sloat's recapitulation of events was objectively unreasonable.  And while the Form IV might not contain Jade's version of events, the police report *does* include Jade's version of events.  (Doc. 29-2 at 6.)

---

[5]  Arizona courts have recognized that rocks can be dangerous instruments. *See, e.g.*, *In re A.E.*, No. 2 CA-JV 2023-0117, 2024 WL 471654, at *2 (Ariz. Ct. App. Feb. 7, 2024).

Although Plaintiffs repeatedly bemoan the Form IV for being "false," they seem to exclusively focus on the Form IV "[s]tating there was a deadly weapon or dangerous instrument," which, in Plaintiff's view, "is directly contradicted by the police report." (Doc. 34 at 8.) Plaintiffs state that "further investigation revealed that no rocks were found." (Doc. 17 at 7 ¶ 40.)

The Form IV provides that at approximately 1 PM Jade twice "threw a rock at [Sloat's] face." (Doc. 29-2 at 2.) The police report provides that "further investigation revealed that no rocks were found" but that a "single rock was found" on a nearby house. (Doc. 29-3 at 5.) However, this is not the inconsistency Plaintiffs make it out to be. The Form IV pertains to the 1 PM altercation between Jade and Sloat. (Doc. 29-2 at 1.) However, the police report pertains to an 11 PM "Disorderly Conduct call" placed regarding a "suspect . . . throwing rocks at a neighbor's house." (Doc. 29-3 at 5.) It is unclear that the Form IV is "blatantly false" based on police not finding a rock on the ground more than 10 hours after the alleged altercation.

### b. Disorderly Conduct

There was probable cause to prosecute Jade for disorderly conduct. Under Arizona law, "[a] person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person . . . [e]ngages in fighting, violent or seriously disruptive behavior." Ariz. Rev. Stat. § 13-2904(A)(1). The above facts and analysis are sufficient to establish probable cause to prosecute Jade for disorderly conduct.

### c. Criminal Damage

Finally, there was probable cause to prosecute Jade for criminal damage. "A person commits criminal damage by . . . [r]ecklessly defacing or damaging property of another person." Ariz. Rev. Stat. § 13-1602(A)(1). Jade was charged with "causing damage in an amount of $250 or less" under § 13-1602(B)(6). (Doc. 29-5 at 3.) In the police report, Officer Pereira wrote:

> During the process of placing [Jade] in the rear cab of the patrol vehicle[,] [Jade]was uncooperative and refused to enter the patrol vehicle, placing his

right foot at the patrol vehicle's door. After brief resistance, [Jade] was placed in the rear cab of the patrol vehicle. While inside the patrol vehicle, [Jade] became aggressive and began kicking the patrol vehicle from inside, causing substantial damage to the right rear patrol vehicle's door. I secured [Jade's] legs with a strap using restraint technique to prevent kicking, in an attempt to prevent more damage to the patrol vehicle and to prevent [Jade] from injuring himself.

(Doc. 29-3 at 5.)  Plaintiffs contend that the criminal damage prosecution was malicious because it was "dismissed after prosecutors found out the claims were false and misleading about . . . the damage to the vehicle."  (Doc. 17 at 15 ¶ 80.)  Plaintiffs allege that the prosecutor stated: "The State has been notified by the Police Department there was no significant damage to the police vehicle as a result of this incident and therefore no restitution sought."  (*Id.* at 7 ¶ 38.)  Accepting as true that there was no "significant damage" to the police vehicle, there still was probable cause to prosecute Jade for criminal damage.

In Arizona, criminal damage does not require "significant damage."  Instead, § 13-1602(A)(1) only requires reckless damage of another's property.  For purposes of § 13-1602(A)(1), "damage" is defined broadly as it "means *any* physical or visual impairment of *any* surface."  Ariz. Rev. Stat. § 13-1701(1) (emphasis added); *see* Ariz. Rev. Stat. § 13-1601(1) (adopting § 13-1701's definition of "damage" to § 13-1602).

Accordingly, the amount of damage caused does not influence whether someone commits criminal damage in the first instance.  Instead, the amount of damage affects the punishment for criminal damage.  *See* § 13-1601(B).  Although the alleged damage Jade caused might have been dubbed "substantial" and "significant" by police officers and prosecutors, Jade was ultimately charged with causing less than $250 worth of damage—the lowest form of criminal damage.  *See* § 13-1602(B)(6).

Taking as true Plaintiffs' allegations that Jade did not cause "substantial damage," the police report would still establish probable cause.  Jade kicking the inside of the police car to a point necessitating restraint would be "sufficient to warrant an ordinarily prudent man in believing the accused is guilty of" causing criminal damage.  *Gonzales*, 52 P.3d

- 12 -

at 187 (citation modified).  Again, criminal damage only requires "*any* physical or visual impairment of *any* surface." § 13-1701(1) (emphasis added).

Accordingly, the Court **dismisses** with prejudice Jade's malicious prosecution claim against the City Defendants.

### B.  Assault and Battery

The FAC includes state law claims for assault and battery against the City Defendants. (Doc. 17 at 9). Under Arizona law, "[a]n actor is subject to liability to another for battery if the actor intentionally engages in an act that results in harmful or offensive contact with the person of another." *Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 438 (Ariz. 2003). "Similarly, to succeed on an assault claim a plaintiff must prove that the defendant acted with intent to cause another harmful or offensive contact or apprehension thereof, and the other person apprehended imminent contact." *Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039, 1044 (D. Ariz. 2017) (citation modified). "The two claims are the same except that assault does not require the offensive touching or contact." *Id.* (quoting *Garcia v. United States*, 826 F.2d 806, 809 n.9 (9th Cir. 1987)).

Plaintiffs allege that the Officer Defendants "intentionally attacked . . . and harmed" Jade. (Doc. 17 at 9 ¶ 50.) Plaintiffs go on to allege that "[t]hese actions included the offensive contact having countless officers enter the neighbor's home, pointing guns with night scopes/lights at Jade at night at his own house, and the use of a rifle to arrest Jade despite there being no indication weapons were needed to be drawn." (*Id.* at 9–10 ¶ 51).

The assault and battery claims are easily dismissed as to Officers Ravelo, Loper, Figley, and Pereira. The FAC fails to allege that that these officers participated in the above conduct or were even present at Jade's arrest.[6] The only named defendant alleged to participate in the foregoing conduct is Officer Stover. The FAC provides that Officer Stover "used his rifle to arrest Jade despite there being no indication weapons were needed to be drawn." (Doc. 17 at 5 ¶ 25.) This is insufficient to give rise to a battery claim because

---

[6]  Based on the police report, it appears that Officer Pereira was present at Jade's arrest. But it is unclear what role Officer Pereira played in Jade's arrest beyond strapping Jade's legs to keep him from kicking the inside of the police vehicle. (Doc. 29-3 at 5.) The FAC does not cite this incident as giving rise to an assault or battery claim.

Plaintiffs fail to allege that Officer Stover touched or contacted Jade.

This leaves the assault claim against Officer Stover. The Court finds that Plaintiffs have plausibly pleaded that Officer Stover caused Jade to apprehend imminent harm or offensive contact by pointing a rifle at him.

The City Defendants correctly point out that, under Arizona law, police are "justified in threatening or using physical force against another if in making or assisting in making an arrest." Ariz. Rev. Stat. § 13-409; *see Oakry v. City of Tempe*, 629 F. Supp. 3d 974, 987 (D. Ariz. 2022) ("Arizona law provides that a person cannot be civilly liable for justified conduct . . . ."). However, an officer is only justified in using physical force under § 13-409 if: (1) "[a] reasonable person would believe that such force is immediately necessary to effect the arrest or detention or prevent the escape; (2) "[s]uch person makes known the purpose of the arrest . . . or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detained; (3) "[a] reasonable person would believe the arrest or detention to be lawful." § 13-409(1)–(3). While these factors might be met in this case, it would be inappropriate to dismiss the assault claim against Officer Stover at this juncture. Ultimately, the City Defendants bear "the burden of proving a justification defense by a preponderance of the evidence in a civil case." *Ryan v. Napier*, 425 P.3d 230, 241 (Ariz. 2018).

Accordingly, apart from the assault claim against Officer Stover, the Court **dismisses** without prejudice Jade's assault and battery claims against the City Defendants.

### C. Gross Negligence

The FAC includes a gross negligence claim by Jade against the City Defendants. (Doc. 17 at 11). Under Arizona law, gross negligence "involves the creation of an unreasonable risk of bodily harm to another (simple negligence) together with a high degree of probability that substantial harm will result (wantonness)." *Roebuck v. Mayo Clinic*, 575 P.3d 375, 383 (Ariz. 2025) (citation modified). Thus, gross negligence requires negligence paired with a "choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger

1    to any reasonable man." *Id.* (quoting *Williams v. Wise*, 476 P.2d 145, 151 (Ariz. 1970));

2    *see Noriega v. Town of Miami*, 407 P.3d 92, 100 (Ariz. Ct. App. 2017). Plaintiffs fail to

3    plead a gross negligence claim.

4         Plaintiffs allege that the City Defendants acted outrageously by "respon[ding] to

5    this matter at 11:00 at night and going to neighbors and presenting Jade as a dangerous

6    criminal." (Doc. 17 at 11 ¶ 59.) Plaintiffs further allege that the false statements in the

7    Form IV and police report "can support a claim of gross negligence." (*Id.* ¶ 60.) These

8    conclusory allegations are insufficient to demonstrate that the City Defendants were

9    grossly negligent. At bottom, Plaintiffs do not specifically identify any particular action

10   by any particular defendant that rises to the level of gross negligence.

11        First, Plaintiffs fail to allege any facts demonstrating that the City Defendants had

12   reason to know "facts that would lead a reasonable person to recognize their conduct

13   created an unreasonable risk of bodily harm and involved a high probability of substantial

14   harm." *Garibay v. Johnson*, 565 P.3d 236, 246 (Ariz. 2025). Plaintiffs essentially allege

15   that police conducted a late-night arrest that became known to Jade's neighbors. It is

16   unclear what risk of substantial harm Jade was exposed to. This hardly rises to the level

17   of gross negligence.[7]

18        Second, Plaintiffs allege—without any supporting authority—that the City

19   Defendants were grossly negligent because they knowingly gave false testimony. (Doc.

20   17 at 11 ¶ 60.) It is unclear how giving false testimony, by itself, can support a claim of

---

[7]  Plaintiffs do not specifically state that Officer Stover was grossly negligent in pointing a rifle at Jade. However, it is unclear whether Officer Stover's act of pointing a rifle at Jade could plausibly support both an assault claim and a gross negligence claim. *See, e.g.*, *Hernandez v. County of Santa Cruz*, No. CV-24-00353-TUC-SHR, 2025 WL 2495065, at *9 (D. Ariz. Aug. 29, 2025) (dismissing a gross negligence claim where the underlying conduct was an intentional use of force). In *Ryan*, the Arizona Supreme Court recognized that negligence and intentional torts are "mutually exclusive grounds for liability." 425 P.3d at 236. While claimants can assert both claims as alternate theories of liability, claimants must demonstrate that a set of facts plausibly gives rise to both a negligence claim and an intentional tort claim. *See id.* at 238. However, an intentional use of force cannot support a gross negligence claim. *See id.* A negligence claim can only tenably accompany an intentional use of force claim where: (1) the negligence claim is based on "conduct that is independent of the intentional use of force"; or (2) an action can reasonably be construed as either intentional or negligent. *See id.* For example, in *Ryan*, an officer's intentional release of a K-9 did not support a negligence claim. *Id.*

gross negligence.  Plaintiffs fail to link the alleged false testimony to an unreasonable risk of bodily harm.  As other courts in the District have noted, "[while] a plaintiff need not show that actual bodily harm occurred, it is not true that this 'risk of bodily harm' requirement is dispensable when making a claim for gross negligence." *Daurio v. Arizona*, No. CV-25-00001-PHX-SPL, 2025 WL 1745106, at *6 (D. Ariz. June 24, 2025)I.  While false testimony could hypothetically expose someone to bodily harm, that is not this case.  As noted, Plaintiffs fail to demonstrate any patent falsehood in either the Form IV or the police report.  However, even if Plaintiffs did so, these documents were completed after Jade was arrested.  Plaintiffs do not identify what risk of bodily harm Jade faced after the Form IV and police report were completed or how that risk was at all related to the Form IV or the police report.

Accordingly, the Court **dismisses** without prejudice Jade's gross negligence claim against the City Defendants.

### D. Intentional Infliction of Emotional Distress

The FAC claims intentional infliction of emotional distress (IIED) by each Plaintiff against the City Defendants.[8]  (Doc. 17 at 12.)  Under Arizona law, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 785 (Ariz. 1989) (citation modified).  IIED has three elements: (1) "the conduct by the defendant must be 'extreme' and 'outrageous'"; (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of defendant's conduct."  *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)).

Plaintiffs allege that Jade, Bruce, and Sharon each suffered from emotional distress due to "Jade's wrongful arrest, court proceedings and incarceration."  (Doc. 17 at 14 ¶ 73.)

---

[8]  Count Four also includes an IIED claim by Jade against Sloat.  (Doc. 17 at 12).  The Court does not address this claim.

Plaintiffs' IIED claims fail because they fail to allege that the City Defendants' conduct was extreme or outrageous.  Plaintiffs also make blanket assertions that apparently apply to each of the City Defendants without attributing specific conduct to specific defendants.

IIED claims are dismissed for failure to state a claim where the claim is predicated on a lawful arrest.  *See Malnes v. City of Flagstaff*, 710 F. App'x 764, 765 (9th Cir. 2018) (citing *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 496 (Ariz. Ct. App. 1995)).  Lawful arrests cannot "constitute the 'extreme or outrageous' behavior required to establish [IIED]."  *Id.*  (citing *Wallace*, 909 P.2d at 496).  As discussed, Plaintiffs fail to allege that Jade's arrest or prosecution was unlawful.  Accordingly, Plaintiffs' IIED claims fails because those claims are predicated on a lawful arrest and prosecution.

Accordingly, the Court **dismisses** with prejudice Plaintiff's IIED claim against the City Defendants.

### E.  Negligent Infliction of Emotional Distress

The FAC includes claims of negligent infliction of emotional distress ("NIED") by Bruce and Sharon against the City Defendants.  (Doc. 17 at 16.)  Under Arizona law, "the tort of negligent infliction of emotional distress requires" that the plaintiff: (1) "witnessed an injury to a closely related person"; (2) "suffered mental anguish manifested as physical injury"; and (3) "was within the zone of danger so as to be subjected to an unreasonable risk of bodily harm created by the defendant."  *Doe I ex rel. Fleming & Curti PLC v. Warr*, 566 P.3d 342, 352 (Ariz. Ct. App. 2025) (citation modified).

Plaintiffs allege that Bruce and Share "were in the zone of danger" "by seeing their son taken into custody" (Doc. 17 at 16–17 ¶¶ 87, 90.)  As a result, Plaintiffs allege that Bruce and Sharon experienced "emotional distress that resulted in physical harm including loss of sleep, headaches, stomach aches and loss of appetite."  (Doc. 17 at 16 ¶ 87.)  Plaintiffs' claim fails for a myriad of reasons.

It is unclear what injury Bruce and Sharon witnessed as Plaintiffs never specify what harm befell Jade.  Plaintiffs allege that Bruce and Sharon saw "their son harmed" and "were

damaged by seeing their son taken into custody by this conduct." (*Id.* at 16–17 ¶¶ 87, 89.) Plaintiffs also repeatedly allege that Jade incurred physical injuries. (*Id.* at 10 ¶ 52.) However, Plaintiffs never specify what those injuries are or how they were incurred. Instead, Plaintiffs lodge cursory allegations such as "Defendants intentionally attacked [Jade] and harmed him." (*Id.* at 9 ¶ 51.) While it is unclear what "attack" and "harm" means in this context, it appears that Plaintiffs are labeling Jade's arrest as the attack.

Regardless, even if the Court were to accept that Jade incurred the requisite injury, Plaintiffs fail to establish that Bruce and Sharon were in the danger zone. "A person is not within the zone of danger unless he witnesses the injury of a closely related person from a position in which 'the negligent defendant created an unreasonable risk of bodily harm' to him as well." *Marquez v. City of Phoenix*, No. CV-08-1132-PHX-NVW, 2008 WL 11338817, at *1 (D. Ariz. Aug. 11, 2008) (quoting *Keck v. Jackson*, 593 P.2d 668, 670 (Ariz. 1979)). Plaintiffs fail to allege that Bruce and Sharon faced an unreasonable risk of bodily harm.

Finally, Plaintiffs fail to plead that they "suffered mental anguish manifested as physical injury." *Warr*, 566 P.3d at 352. As noted, Plaintiffs complain they experienced "emotional distress that resulted in physical harm including loss of sleep, headaches, stomach aches and loss of appetite." (Doc. 17 at 16 ¶ 87.) In Arizona, "physical injury, as well as a long-term physical illness or mental disturbance, constitutes sufficient bodily harm to support a claim of negligent infliction of emotional distress." *Monaco v. HealthPartners of S. Ariz.*, 995 P.2d 735, 739 (Ariz. Ct. App. 1999). However, "[t]ransitory physical phenomena, such as crying, nightmares, insomnia, and headaches, that are themselves inconsequential and do not result in substantial bodily harm, cannot support a claim for negligent infliction of emotional distress." *Borunda v. Rico*, No. 1 CA-CV 12-0859, 2013 WL 6327652, at *5 (Ariz. Ct. App. Dec. 5, 2013). Plaintiffs fail to establish that their alleged injuries "result[ed] in substantial bodily harm" or otherwise "persist[ed] so as to result in a *long-term* physical illness or mental disturbance." *Id.* (emphasis added).

Accordingly, the Court **dismisses** without prejudice Bruce and Sharon's NIED claim against the City Defendants.

### F.  Defamation

The FAC includes claims of defamation by Plaintiffs against the City Defendants. (Doc. 17 at 15.)  "To prevail on a defamation claim under Arizona law, a plaintiff must show (1) the defendant published a false and defamatory statement, and (2) the defendant either (a) knew the statement to be false and defamatory, (b) acted in reckless disregard to these matters, or (c) acted negligently in failing to ascertain them." *Burton v. Ariz. Dep't of Pub. Safety*, No. CV-20-00920-PHX-JAT, 2025 WL 2806760, at *4 (D. Ariz. Oct. 2, 2025) (citing *Peagler v. Phx. Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977)).

Plaintiffs allege they were defamed because police "[p]resent[ed] Jade or his family as criminals or harboring criminals by going into neighbors' homes to obtain access to the Waichulaitis home to arrest Jade."  (*Id.* at 16 ¶ 84.)  Plaintiffs further allege that "body cameras will show the published statements about the intended arrest." (*Id.*)  Plaintiff fails to adequately plead a defamation claim.

At bottom, Plaintiffs do not identify a false or defamatory statement.  Instead, Plaintiffs appear to argue that Jade's arrest was defamatory because it presented Jade and his family as criminals.  Courts have expressly rejected similar arguments. *See, e.g.*, *Pistor v. Garcia*, No. CV-12-0786-PHX-FJM, 2014 WL 116391, at *7 (D. Ariz. Jan. 13, 2014) ("Plaintiffs contend that their arrests in public communicated to those present that plaintiffs were criminals.  But the law of defamation in Arizona requires 'a false and defamatory statement concerning another.'" (quoting *Fendler v. Phx. Newspapers Inc.*, 636 P.2d 1257, 1261 (Ariz. Ct. App. 1981))).  The Court is unwilling to consider a lawful arrest a "false statement."

Accordingly, the Court **dismisses** with prejudice Plaintiffs' defamation claims against the City Defendants.

**G. Excessive Force (42 U.S.C. § 1983)**

The FAC includes claims of excessive force by Plaintiffs in violation of § 1983[9] against the Officer Defendants. (Doc. 17 at 17.) As noted, a § 1983 claim is predicated on a state actor depriving an individual of a constitutional right. *See WMX Techs.*, 197 F.3d at 372. "The use of excessive force by police officers in the course of an arrest can violate the arrestee's Fourth Amendment right to be free from unreasonable seizures." *Oakry*, 629 F. Supp. 3d at 984. Whether a seizure is unreasonable is an objective inquiry; "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). As the Supreme Court has noted:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.

*Id.* at 396 (citation modified). "Whether a particular use of force was 'objectively reasonable' depends on several factors, including the severity of the crime that prompted the use of force, the threat posed by a suspect to the police or to others, and whether the suspect was resisting arrest." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006).

Plaintiffs allege that excessive force was used because a "SWAT team" was employed to arrest Jade, which was "excessive in relation to the purpose for which it was used." (Doc. 17 at 20 ¶ 101.) Plaintiffs further allege that Jade's arrest was "objectively unreasonable given that Plaintiff was not a threat and there was no reason to bring an extraordinary amount of officers with guns and night scopes at night and involve neighbors to arrest him." (*Id.* ¶ 104.) Plaintiffs also note that Jade was "forcibly arrested and

---

[9] The FAC provides: "Under 42 U.S.C. §1981 and §1982, excessive force and false arrest occurred here." (Doc. 17 at 17 ¶ 92.) The Court assumes the FAC mistakenly cites to these statutes because both pertain to racial discrimination, which is not implicated here. The only other instance in which these statutes are cited is in Plaintiffs' Response which provides: "Under 42 U.S.C. §1981 and §1982, excessive force and false arrest occurred here." (Doc. 34 at 15.) The Court presumes that Plaintiffs reemployed this language by mistake.

1    detained." (*Id.* at 19 ¶ 99.)

2        City Defendants do not seek dismissal of the excessive force claim against Officer

3    Stover. (Doc. 29 at 23.) This leaves Officers Ravelo, Loper, Figley, and Pereira. But as

4    noted, the FAC fails to allege that Officers Ravelo, Loper, and Figley were even present at

5    the arrest. Neither does the FAC allege that Officers Ravelo, Loper, and Figley employed

6    excessive force. While the police report establishes that Officer Pereira was present at

7    Jade's arrest, it is unclear what role Officer Pereira played in Jade's arrest beyond strapping

8    Jade's legs to keep him from kicking the inside of the police vehicle. (Doc. 29-3 at 5.) The

9    FAC does not cite this incident as constituting excessive force.

10       Still, Plaintiffs contend that Officers Ravelo, Loper, Figley, and Pereira "may be

11   held liable under the 'integral participant' standard." (Doc. 17 at 8 ¶ 46.) "[A]n official

12   whose individual actions do not themselves rise to the level of a constitutional violation

13   may be held liable under section 1983 only if the official is an integral participant in the

14   unlawful act." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (citation modified). An

15   official may be considered an integral participant in two situations:

16           (1) the defendant knows about and acquiesces in the constitutionally
             defective conduct as part of a common plan with those whose conduct
17           constitutes the violation or (2) the defendant sets in motion a series of acts
             by others which the defendant knows or reasonably should know would
18           cause others to inflict the constitutional injury.

19   *Id.* (citation modified). Even if Jade was subject to excessive force, the FAC fails to allege

20   that Officers Ravelo, Loper, Figley, or Pereira were integral participants in applying said

21   force.

22       The FAC fails to implicate the first integral participant situation as it does not allege

23   that Officers Ravelo, Loper, Figley, or Pereira knew about or acquiesced to any behavior

24   that might be construed as constituting excessive force. This "category of liability is fairly

25   narrow." *Id.* An officer knows about or acquiesces to unconstitutional behavior where he

26   participates in either the planning or execution of such behavior. *See id.* As noted, the

27   FAC does not establish that the foregoing officers participated in the execution of the arrest.

28   Neither does the FAC establish that the foregoing officers played any meaningful part in

planning Jade's arrest—or at least those details of the arrest which could arguably give rise to an excessive force claim.

Similarly, the FAC fails to implicate the second integral participant situation. The FAC does not allege that Officers Ravelo, Loper, Figley, or Pereira set in motion events that were reasonably known to result in the use of excessive force.

At bottom, the FAC attempts to employ the integral participant doctrine as a catchall to broadly impose liability on any officer that was remotely involved in Jade's arrest. However, integral participant "liability may not be imposed based on a 'team effort' theory that would allow the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Id.* at 890 (citation modified).

Accordingly, the Court **dismisses** without prejudice Jade's excessive force claim under § 1983 against Officers Ravelo, Loper, Figley, or Pereira.

## H. Conspiracy to Interfere With Civil Rights (42 U.S.C. § 1985)

The FAC includes a claim for conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985 by Jade against the Officer Defendants. (Doc. 17 at 20.) The "first clause" of § 1985(3)— commonly known as the "equal protection clause"—"prohibits two or more persons from conspiring to deprive any person or class of persons of the equal protection of the law." [10] *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). The elements of a § 1985(3) claim are:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance

---

[10] The Court assumes Plaintiff does not bring a claim under either § 1985(1) or (2) because neither is remotely implicated. Section 1985(1) "extend[s] exclusively to the benefit of federal officers." *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717 (9th Cir. 1981). Section 1985(2) "proscribes conspiracies 'to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified.'" *Head v. Wilkie*, 936 F.3d 1007, 1010 (9th Cir. 2019) (quoting § 1985(2)). Additionally, the Court assumes that Plaintiff does not bring a claim under the "second clause" of § 1985(3) which is known as the "support-or-advocacy clause." *See Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1072 (C.D. Cal. 2024). "A plaintiff asserting a claim under this subsection must . . . establish that the conspiracy's purpose was to force, intimidate, or threaten an individual legally entitled to vote who is engaging in lawful activity related to voting in federal elections." *Id.*

of this conspiracy; (4) whereby a person is either injured in their person or property or deprived of any right or privilege of a citizen of the United States.

*Gaetz*, 722 F. Supp. 3d at 1068–69 (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992)).

Plaintiff claims that "video evidence shows that two or more of the Defendants conspired to ignore the typical procedure of obtaining and then resenting [sic] clearly exculpatory evidence as to Jade's rights to defend himself on his property." (Doc. 17 at 21 ¶ 108.) Plaintiff further claims that the following facts "illustrates a conspiracy": "arresting Jade at night, involving the neighbors, falsifying the Form IV and related police reports, setting forth false facts to try and justify a $250,000 bond . . . [,] not doing any investigation despite setting in motion a business card to have Jade contact police," and the " police report alleging substantial damage to a vehicle then the City's own prosecution admitting there was none." (*Id.* ¶¶ 109–10.) These allegations are insufficient to plausibly allege that any particular Officer Defendant conspired to injure Jade.

To meet the first element, "the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). "[A] civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in that damage." *Page v. Clark Cnty. Fire Dist. 6*, 733 F. Supp. 3d 1006, 1019 (W.D. Wash. 2024) (citation modified). Such an agreement "may be inferred from conduct and need not be proved by evidence of an express agreement." *Ward v. E.E.O.C.*, 719 F.2d 311, 314 (9th Cir. 1983). Still, claimants must provide "plausible allegations—with specific facts—that there was a 'meeting of the minds' or an 'agreement.'" *Gaetz*, 722 F. Supp. 3d at 1069.

Plaintiffs fail to allege that any of the Officer Defendants expressly conspired against Jade. Neither do Plaintiffs establish that any of the Officer Defendants tacitly agreed to injure Jade. Plaintiffs merely allege that discrete events precipitated by discrete

individuals, in the aggregate, demonstrate the existence of a conspiracy. "Although a conspiracy may be shown by circumstantial evidence, to establish violation of Section 1985(3), plaintiff will have to do more than show independent parallel behavior on the part of the defendants." *Reichardt v. Payne*, 396 F. Supp. 1010, 1019 (N.D. Cal. 1975). Plaintiffs only identify discrete events without plausibly alleging that these events were a part of a coordinated effort to injure Jade.

Additionally, Plaintiffs fail to allege what role each Officer Defendant played in the alleged conspiracy. Again, Plaintiffs assert that each Officer Defendant conspired against Jade. However, Plaintiffs fail to allege, even generally, what role each Officer Defendant had in the broader agreement to injure Jade. Plaintiffs' generic allegation that each Officer Defendant engaged in a conspiracy is "not enough to give fair notice and to enable the opposing party to defend itself effectively." *I.H. ex rel. Hunter v. Oakland Sch. for Arts*, 234 F. Supp. 3d 987, 995 (N.D. Cal. 2017) (citation modified).

Finally, claims under § 1985(3) require "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1095 (9th Cir. 2000) ("A cause of action under the first clause of § 1985(3) cannot survive a motion to dismiss absent an allegation of class-based animus."). Even if the Officer Defendants conspired against Jade, Plaintiffs fail to allege that said conspiracy was motivated by *any* discriminatory animus. Although courts are divided as to what "categories" of animus are sufficient to give rise to a § 1985(3) claim, Plaintiffs fail to claim that the alleged conspiracy was motivated by *any* commonly recognized animus such as race, religion, or political affiliation. *See Pasadena Republican Club v. W. Just. Ctr.*, 424 F. Supp. 3d 861, 878 (C.D. Cal. 2019), *aff'd*, 985 F.3d 1161 (9th Cir. 2021) (citing cases). Thus, Plaintiffs fail to plausibly allege the existence of a conspiracy, what role each Officer Defendant played in the alleged conspiracy, or that the alleged conspiracy was motivated by discriminatory animus.

Accordingly, the Court **dismisses** without prejudice Jade's § 1985(3) claim against

1    the Officer Defendants.

2    **I.    *Monell* Claim**

3    Finally, the FAC includes the following *Monell* claims under § 1983 by Jade against

4    the City: unconstitutional policy and custom; failure to supervise and discipline; failure to

5    train; and negligent hiring.  (Doc. 17 at 21.)   As noted, § 1983 provides a cause of action

6    against state actors who deprive individuals of their constitutional rights.  *See WMX Techs.*,

7    197 F.3d at 372.   A city can be a "state actor" amenable to suit under § 1983.  *Monell v.*

8    *Dep't of Soc. Servs.*, 436 U.S. 658, 693–94 (1978).  However, § 1983 does not "impose

9    liability vicariously on governing bodies solely on the basis of the existence of an

10   employer-employee relationship with a tortfeasor."  *Bd. of Cnty. Comm'rs v. Brown*, 520

11   U.S. 397, 403 (1997) (quoting *Monell*, 436 U.S. at 692).   "Instead, in *Monell* and

12   subsequent cases, [the Supreme Court] required a plaintiff seeking to impose liability on a

13   municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the

14   plaintiff's injury."  *Id.*  Such claims are commonly known as "*Monell* claim[s]."  *E.g.*,

15   *Lockett v. County of Los Angeles*, 977 F.3d 737, 740 (9th Cir. 2020).

16   To assert a *Monell* claim, a plaintiff must prove: "(1) that the plaintiff possessed a

17   constitutional right of which she was deprived; (2) that the municipality had a policy;

18   (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right;

19   and (4) that the policy is the moving force behind the constitutional violation."  *Plumeau*

20   *v. Sch. Dist. No 40*, 130 F.3d 432, 438 (9th Cir. 1997) (citation modified).  Ultimately,

21   "there must be 'a direct causal link between a municipal policy or custom and the alleged

22   constitutional deprivation.'"  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957

23   (9th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

24   Plaintiffs allege that the City "either failed to properly hire, supervise, discipline,

25   monitor, terminate and/or train its employees and/or failed to establish policies and

26   procedures that would prevent individuals that were not fit for duty from being hired,

27   employed, employed without supervision and retained as detention or peace officers."

28   (Doc. 17 at 22 ¶ 113.)   Plaintiffs specifically point out that Officer Ravelo "instructed

Sharon to have Jade call the Police Department in order to get his side of the story" but that the Officer Defendants "did not wait" and instead "set in motion the hunting down of Jade." (*Id.* ¶¶ 115–16.)  Plaintiffs allege this resulted in "an outrageous nighttime SWAT assault" and "Defendant Periera falsif[ying] his police report."  (*Id* ¶¶ 116–17.)  It is unclear what constitutional right Plaintiffs are attempting to vindicate through their *Monell* claim. Nonetheless, the only remaining constitutional law claim is the alleged use of excessive force by Officer Stover against Jade.  Accepting the excessive force claim as true, Plaintiffs fail to establish that the City was "the moving force behind" the alleged use of excessive force.

Plaintiffs fail to point to a City "policy or custom" that bears a "direct causal link" with the alleged use of excessive force.  *See Villegas*, 541 F.3d at 957 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  Instead, Plaintiff recites that the City "either failed to properly hire, supervise, discipline, monitor, terminate and/or train its employees and/or failed to establish policies and procedures that would prevent individuals that were not fit for duty from being hired." (Doc. 17 at 22 ¶ 113.)  However, these bare allegations fail to identify a discrete City policy or action that was the "moving force behind the constitutional violation."  *Plumeau*, 130 F.3d at 438 (quoting *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).  Plaintiffs' allegation that the City negligently hired certain employees fails for similar reasons.  However, Plaintiffs fail to provide any meaningful detail beyond blanket assertions that the City negligently hired each employee that was involved in Jade's arrest.

Additionally, Plaintiffs do not plausibly allege that the City's failure to train its employees resulted in excessive force against Jade.  Typically, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation modified).  "Only when a city is on actual or constructive notice that a particular omission in its training program causes city employees to violate citizens' constitutional rights can the city be deemed deliberately indifferent."  *Hayes v. Riley*, 525

F. Supp. 3d 1118, 1120 (N.D. Cal. 2020) (citation modified) (quoting *Connick*, 563 U.S. at 61). Plaintiffs only point to one instance in which excessive force might have been used. This is insufficient to plausibly demonstrate the City failed to train its employees. As the court in *Hayes* noted:

> To survive a motion to dismiss, a claim of deliberate indifference based on a city's failure to train requires more information about prior instances of officer misconduct, what those incidents entailed, what the city knew (or should have known) about the incidents, and what training protocols could have been implemented to prevent similar incidents from reoccurring.

525 F. Supp. 3d at 1120. Plaintiffs fail to meet this standard.

Furthermore, Plaintiffs do not plausibly allege that the City failed to discipline its employees. "[A]llegations that a city repeatedly refused, or failed to take appropriate corrective action against one officer when that officer has numerous incidents of misconduct may form the basis for liability against the city employing that officer." *Hayes*, 525 F. Supp. 3d at 1121 (citation modified). Even assuming Plaintiffs intended to allege that the City failed to discipline any of the named officers, Plaintiffs fail to establish any particular officer engaged in "numerous incidents of misconduct." *See id.* Plaintiff's bald assertion that the City failed to discipline its officers is insufficient to plead a failure to discipline claim.

Accordingly, the Court **dismisses** without prejudice Jade's *Monell* claim against the City.

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED dismissing** the following counts with prejudice: (1) Count Four: the IIED claims; (2) Count Five: the false imprisonment claims; (3) Count Six: the malicious prosecution claims; (4) Count Seven: the defamation claims;; (5) Count Nine: the false arrest claim under § 1983 (Doc. 17).

**IT IS FURTHER ORDERED dismissing** the following counts without prejudice: (1) Count One: the assault and battery claims except for the assault claim as to Officer Stover; (2) Count Three: the gross negligence claims (3) Count Nine: the excessive force

claims under § 1983; (4) Count Eight: the NEID claims; (5) Count Ten: the conspiracy claims under § 1985; and (6) Count Eleven: the *Monell* claims under § 1983 (Doc. 17).

**IT IS FURTHER ORDERED granting** Plaintiff leave to amend the claims dismissed without prejudice. If Plaintiffs so choose, they must file a Second Amended Complaint no later than thirty (30) days after the date this Order is issued.

Dated this 18th day of November, 2025.

Honorable Susan M. Brnovich
United States District Judge