**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jade Waichulaitis, et al., | No. CV-25-00900-PHX-SMB |
| Plaintiffs, | **AMENDED ORDER** |
| v. | |
| Michael Sloat, et al., | |
| Defendants. | |

Pending before the Court is Defendants City of Chandler (the "City"), Lydia Ravelo, Matthew Loper, Matthew Figley, Hiago Pereira, and Ryan Stover's (collectively, the "City Defendants") Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") (Doc. 51). The Motion is fully briefed. For the following reasons, the Court **grants** Defendants' Motion.

## I.     BACKGROUND

This case stems from Plaintiff Jade Waichulaitis' ("Jade") allegation that he was falsely arrested and charged with aggravated assault. (Doc. 46 at 3 ¶ 11.) The SAC is materially similar to the First Amended Complaint ("FAC"). The SAC alleges as follows. On April 17, 2024, Jade observed Defendant Michael Sloat ("Sloat") stealing a gas can from his driveway. (*Id.* at 7 ¶ 35.) Jade did not know Sloat at that time. (*Id.*) Jade confronted Sloat, who subsequently recorded Jade with his phone. (*Id.*) Jade attempted to grab the phone. (*Id.* ¶ 36.) Sloat then attacked Jade while holding the gas can. (*Id.* ¶¶ 36–37.) During the altercation, Jade tried to retrieve the gas can from Sloat, but the cap

came loose spilling gas on Jade and Sloat.  (*Id.* ¶ 37.)

As Jade backed towards his front door, Sloat followed him.  (*Id.* ¶ 38.)  Jade then "acted in self-defense against [Sloat] to protect his house."  (*Id.*)  Sloat and Jade disagreed as to whether Jade used a rock in self-defense or produced a lighter during the altercation.  (*Id.* ¶ 39.)  Jade incurred multiple bruises and a cut on his forehead.  (*Id.* at 7–8 ¶ 36.)

Jade told his mother, Sharon Waichulaitis ("Sharon") to call the police because he had been punched by Sloat.  (*Id.* at 4 ¶ 19.)  Jade was not present when Officers Ravelo, Loper, and Figley of the Chandler Arizona Police Department arrived at the house.  (*Id.* at 4 ¶ 19, 5 ¶ 24.)  Sloat told the police that Jade had attacked him.  (*Id.* at 4 ¶ 15.)  Sloat said he went onto Jade's property to get his phone but tackled Jade after Jade called Sloat "a name" and doused him with gasoline.  (*Id.* at 4 ¶ 18, 6 ¶ 34.)

Officer Figley gave Sharon a report number and instructed her to have Jade contact police "in order to get his side of the story."  (*Id.* at 5 ¶ 26.)  However, Officer Ravelo immediately put out an "attempt to locate" for Jade "to arrest him for probable cause for aggravated assault." (*Id.* ¶ 23.)

Later that night, an "Immediate Action Team" ("IAT") "was formed in front of Waichulaitis' residence and another IAT was formed in the backyard of the rear of the neighbor's home in an attempt to arrest Jade."[1]  (*Id.* at 6 ¶ 29.)  Jade was arrested after he "briefly ran from police." (*Id.* ¶ 31.)  Officer Stover "used his rifle to arrest Jade" and other officers pointed guns at his house with "night scopes/lights."  (*Id.* at 6 ¶ 31, 11 ¶ 58.)

The SAC adds the following new allegations pertinent to the arrest. First, the SAC adds that "[a]ll Defendants were involved in the investigation into Jade." (*Id.* at 12 ¶ 65.) The SAC further alleges that Sharon, Bruce Waichulaitis ("Bruce")—Jade's father, and Officers Periera, Stover, Ravelo, Figley, and Loper were all present at the time of the arrest. (*Id.* at 10 ¶ 56, 14 ¶ 78.)  Lastly, the SAC states that "Defendants Ravelo, Stover and

---

[1]  The SAC also alleges that a "SWAT team" was used to arrest Jade.  (Doc. 46 at 3 ¶ 11.) The FAC included a similar allegation and the Court noted that it was "unclear what the distinction—or relationship—[was] between the IAT and the SWAT team." (Doc. 43 at 2 n.1.)  Plaintiffs did not to address this point of confusion.  Thus, the Court assumes that Plaintiffs use "SWAT team" and "IAT" interchangeably to refer to the same group of officers.

Pereira were all part of the nighttime raid." (*Id.* at 17 ¶ 88.)

Jade was charged with aggravated assault, disorderly conduct, and criminal damage. (*Id.* at 3 ¶ 11; 8 ¶ 44; 9 ¶ 47.)  After the arrest, Officer Ravelo submitted a "false or misleading Form IV/release questionnaire" that did not include Jade's version of events.[2] (*Id.* at 3 ¶ 15, 6 ¶ 33.)  Additionally, it is alleged that Officer Pereira falsified his police report by providing that Jade caused "substantial damage to the right rear patrol vehicle's door" by kicking it despite there being "no significant damage to the police vehicle." (*Id.* at 8 ¶¶ 42–44.)  Jade spent ten days in jail before the charges were dismissed. (*Id.* at 9 ¶ 48.)

Jade, Sharon, and Bruce (collectively, "Plaintiffs") now bring both state and federal claims against Sloat, the City, and Officers Ravelo, Loper, Figley, Pereira, and Stover.  The City Defendants moved to dismiss claims against them within Plaintiffs' First Amended Complaint.  (Doc. 29.)  In its November 18, 2025 Order ("November Order"), the Court granted the motion in part and gave Plaintiff leave to amend the claims dismissed without prejudice.  (Doc. 43 at 27–28).  The present Motion only seeks dismissal of the claims brought against the City Defendants.  This Order collectively refers to Officers Ravelo, Loper, Figley, Pereira, and Stover as the "Officer Defendants."

## II.    LEGAL STANDARD

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] A Form IV outlines details of an arrest, including "facts which establish probable cause for the crime(s) for which the defendant is booked or is charged." See Ariz. R. Crim P. Form 4(a). A "Form IV" is a form completed by police and used by Arizona courts See Ariz. R. Crim. P. 41.

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.    DISCUSSION

City Defendants move to dismiss: (1) Count One: the assault claims except for the assault claim as to Officer Stover; (2) Count Three: the gross negligence claims; (3) Count Four: the NIED claims; (4) the excessive force claims under § 1983; and (5) the *Monell* claims under § 1983. (Doc. 51 at 4–5, 7, 9, 11.)

City Defendants specifically request that the Court dismiss these claims with prejudice.  (Doc. 51 at 13.)  When deciding whether to grant leave to amend or dismiss with prejudice, courts consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Id.*

The SAC displays a "repeated failure to cure deficiencies."  *See id.*  The Court's November Order clearly outlined the deficiencies in Plaintiffs' FAC and cautioned Plaintiffs against using a shotgun pleading, yet Plaintiffs still fail to sufficiently support their claims.  (Doc. 43 at 5); *see Fleming v. Cigna Health Corp.*, No. 17-CV-04852-EMC, 2018 WL 3023377, at *3 (N.D. Cal., 2018) (dismissing all claims with prejudice where "the Court's prior orders permitting amendment clearly identified the deficiencies and what Plaintiff needed to do in order to remedy them").  At bottom, the SAC includes a few additionally conclusory allegations that do not materially address the issues with the FAC.  Therefore, the Court will grant the City Defendants' request to dismiss the claims with prejudice.  Now, the Court addresses each claim in turn.

### A. Assault

Plaintiffs assert an assault claim against the City Defendants.  Under Arizona law, "to succeed on an assault claim a plaintiff must prove that the defendant acted with intent to cause another harmful or offensive contact or apprehension thereof, and the other person apprehended imminent contact."  *Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039, 1044 (D. Ariz. 2017) (citation modified).  "[A]ssault does not require the offensive touching or contact." *Id.* (quoting *Garcia v. United States*, 826 F.2d 806, 809 n.9 (9th Cir. 1987)).

In its November Order, the Court dismissed Plaintiffs' assault claim against each City Defendant except Officer Stover.  (Doc. 43 at 27.)  The Court found that the FAC failed to state a claim for assault against Officers Ravelo, Loper, Figley, and Pereira because Plaintiffs did not allege that these officers participated in the tortious conduct "or

were even present at Jade's arrest." (Doc. 43 at 13.)

Plaintiffs attempt to remedy their claim by merely alleging that Officers Periera, Ravelo, Figley, and Loper were present at Jade's arrest. (Doc. 46 at 11 ¶ 58–59.) However, the SAC fails to allege any actions taken by these officers. (*Id.*) Plaintiffs claim that City Defendants placed [Jade] in fear of imminent harm and/or harmed him," "Defendants' actions constituted use of excessive force," and that those actions included "countless officers enter[ing] the neighbor's home" and "pointing guns with night scopes/lights at Jade at night at his own house." (Doc. 46 at 10–11 ¶¶ 57–58.) Still, the SAC fails to identify "which of the defendants are responsible for which acts or omissions." *See Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (citation modified). Plaintiffs fail to state a claim because the SAC does not allege that Officers Periera, Ravelo, Figley, and Loper participated in the alleged assault.

Accordingly, the Court dismisses with prejudice Jade's assault claims against Officers Periera, Ravelo, Figley, and Loper.

**B. Gross Negligence**

The SAC also includes a gross negligence claim by Jade against the City Defendants. Under Arizona law, gross negligence "involves the creation of an unreasonable risk of bodily harm to another (simple negligence) together with a high degree of probability that substantial harm will result (wantonness)." *Roebuck v. Mayo Clinic*, 575 P.3d 375, 383 (Ariz. 2025) (citation modified). Thus, gross negligence requires negligence paired with a "choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man." *Id.* (quoting *Williams v. Wise*, 476 P.2d 145, 151 (Ariz. 1970)); *see Noriega v. Town of Miami*, 407 P.3d 92, 100 (Ariz. Ct. App. 2017). Plaintiffs fail to plead a gross negligence claim.

The Court previously dismissed Plaintiffs' gross negligence claim because it was unclear what risk of substantial harm the arrest exposed Jade to or what any particular Defendant did that rose to the level of gross negligence. (Doc. 43 at 15–16.) Additionally,

the Court rejected Plaintiffs' attempt to base their gross negligence claim on the alleged "false testimony" in the Form IV. (*Id.*) The Court explained that "[i]t is unclear how giving false testimony, by itself, can support a claim of gross negligence." (*Id.*) The Court also noted that the Form IV was filed *after* the arrest occurred, and Plaintiffs do not identify what risk of bodily harm Jade faced from Defendant Ravelo's alleged falsification of Form IV following the arrest. (*Id.*)

The SAC alleges that the City Defendants acted outrageously by "respon[ding] to this matter at 11:00 at night and going to neighbors and presenting Jade as a dangerous criminal." (Doc. 46 at 12–13 ¶ 67.) Plaintiffs further allege that the false statements in the Form IV and police report "can support a claim of gross negligence." (*Id.* at 13 ¶ 68.) Plaintiffs add four new allegations in the SAC: (1) "All Defendants were involved in the investigation into Jade and all knew that the alleged assault occurred on Jade's property;" (2) many officers arrived on Jade's property "at 11:00pm with night scopes and weapons drawn with no attempt to simply knock on the door and talk to him" created an unreasonable risk of bodily harm to those in the zone; (3) Jade was frightened when he "saw lights and guns on his own property" and "there is no evidence he intentionally fled from police;" and (4) "[t]he Form IV is the evidence that police had at the time of arrest." (Doc. 46 at 12–13 ¶¶ 65, 70–71.)

The new allegations do not solve the deficiencies identified in the November Order. It is still unclear what risk of substantial harm the arrest exposed Jade to or what any particular Defendant did that rises to the level of gross negligence. The additional allegations are nothing more than conclusory restatements of the other allegations relating to the arrest that this Court already determined were insufficient to support a gross negligence claim. (Doc. 43 at 14–16.) And nothing Plaintiffs added to the SAC provides any more clarity on or support for Plaintiffs' "false testimony" theory of gross negligence liability.

Accordingly, the Court dismisses Jade's gross negligence claim with prejudice.

### C. Negligent Infliction of Emotional Distress

The SAC includes claims of negligent infliction of emotional distress ("NIED") by Sharon and Bruce against the City Defendants.  (Doc. 46 at 14.)  Under Arizona law, "the tort of negligent infliction of emotional distress requires" that the plaintiff: (1) "witnessed an injury to a closely related person"; (2) "suffered mental anguish manifested as physical injury"; and (3) "was within the zone of danger so as to be subjected to an unreasonable risk of bodily harm created by the defendant." *Doe I ex rel. Fleming & Curti PLC v. Warr*, 566 P.3d 342, 352 (Ariz. Ct. App. 2025) (citation modified).

The Court previously dismissed Plaintiffs' NIED claim because Plaintiffs failed to establish any of the NIED elements.  First, Plaintiffs failed to sufficiently plead that Sharon and Bruce witnessed an injury to Jade.  Plaintiffs only stated in a conclusory manner that Jade was injured and harmed by the SWAT encounter but included no facts to bolster their claim.  Second, Plaintiffs failed to establish that Sharon and Bruce were in the zone of danger.  "A person is not within the zone of danger unless he witnesses the injury of a closely related person from a position in which 'the negligent defendant created an unreasonable risk of bodily harm' to him as well." *Marquez v. City of Phoenix*, No. CV-08-1132-PHX-NVW, 2008 WL 11338817, at *1 (D. Ariz. Aug. 11, 2008) (quoting *Keck v. Jackson*, 593 P.2d 668, 670 (Ariz. 1979)).  Plaintiffs offered no facts to show that Sharon and Bruce faced an unreasonable risk of bodily harm.  Lastly, Plaintiffs failed to plead that they "suffered mental anguish manifested as physical injury." *Warr*, 566 P.3d at 352.  While Plaintiffs stated that Sharon and Bruce suffered emotional distress that resulted in headaches, stomach aches, loss of sleep, and loss of appetite, these symptoms do not constitute the requisite "substantial bodily harm" or "long-term physical illness or mental disturbance." *Borunda v. Rico*, No. 1 CA-CV 12-0859, 2013 WL 6327652, at *5 (Ariz. Ct. App. Dec. 5, 2013).

Plaintiffs do not assert any new substantive factual allegations in their SAC that address these deficiencies.  There is still no clarity as to what injury Sharon and Bruce witnessed or how the lawful arrest of their son placed them at an unreasonable risk of

bodily harm.  Because Plaintiffs still fail to establish any of the NIED elements, the claim fails for the reasons stated in the November Order.

Accordingly, the Court dismisses with prejudice Sharon and Bruce's NIED claim.

**D. Excessive Force (42 U.S.C. § 1983)[3]**

The SAC includes a § 1983 excessive force claim by Jade against the Officer Defendants.  (Doc. 46 at 17 ¶ 86.)  The Motion seeks dismissal of this claim as to Officers Ravelo, Figley, Roper, and Pereira.  (Doc. 51 at 9.)

A § 1983 claim is predicated on a state actor depriving an individual of a constitutional right.  *See WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc).  "The use of excessive force by police officers in the course of an arrest can violate the arrestee's Fourth Amendment right to be free from unreasonable seizures."  *Oakry v. City of Tempe*, 629 F. Supp. 3d 974, 984 (D. Ariz. 2022).  Whether a seizure is unreasonable is an objective inquiry; "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  As the Supreme Court has noted:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.

*Id.* at 396 (citation modified).  "Whether a particular use of force was 'objectively reasonable' depends on several factors, including the severity of the crime that prompted the use of force, the threat posed by a suspect to the police or to others, and whether the suspect was resisting arrest" or "attempting to evade arrest by flight."  *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006); *Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir. 2002).

---

[3]  The FAC claimed that excessive force took place under §§ 1981 and 1982.  (Doc. 17 at 17 ¶ 92.)  The Court previously noted that this was mistake because "these statutes because both pertain to racial discrimination, which is not implicated here."  (Doc. 43 at 20.)  The SAC repeats this mistake.  (Doc. 46 at 17 ¶ 86.)

"[A]n official whose individual actions do not themselves rise to the level of a constitutional violation may be held liable under section 1983 only if the official is an integral participant in the unlawful act."  *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (citation modified).  An official may be considered an integral participant in two situations:

> (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant sets in motion a series of acts by others which the defendant knows or reasonably should know would cause others to inflict the constitutional injury.

*Id.* (citation modified).

The Court previously dismissed Plaintiffs' § 1983 claim for three reasons: (1) the FAC did not allege that Officers Ravelo, Loper, and Figley were even present at Jade's arrest; (2) while Officer Pereira was present, the FAC did not attribute any excessive force to his behavior; and (3) the FAC failed to allege that Officers Ravelo, Loper, Figley, or Pereira were integral participants in applying excessive force to Jade.

The SAC adds that Officers "Ravelo [and] Pereira were [both] part of the nighttime raid that resulted in the excessive force being inflicted." (*Id.* at 17 ¶ 88.)  The SAC further contends that Officer Ravelo "set in motion the hunting down of Jade" and Officers "Ravelo, Figley and Loper, were all part of the initial investigation and knew the facts and set forth the motions that allowed the nighttime assault to occur." (*Id.* at 17 ¶ 87.)  Plaintiffs did not add any new allegations in their SAC that Officers Ravelo, Loper, Figley, or Pereira directly used excessive force against Jade.  Therefore, the Court assumes Plaintiffs proceed under the integral participant theory only.

At bottom, the SAC fails to correct the previously identified defects.  The SAC's conclusory allegations are insufficient to establish that these officers either: (1) knew "about and acquiesce[d] in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation"; or (2) set "in motion a series of acts by others which the defendant knows or reasonably should know would cause others to inflict the constitutional injury." *Peck*, 51 F.4th at 889 (citation modified).  The SAC is

too conclusory as it does not describe what "parts" each of the Officers played in the "nighttime assault." Although unclear, it appears that excessive force claim is primarily predicated on the deployment of a SWAT team. (*See* Doc. 46 at 19 ¶ 97.) The SAC does not materially connect Officers Ravelo, Figley, Roper, and Pereira to the use of a SWAT team. As was the case previously, "liability may not be imposed based on a 'team effort' theory that would allow the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." Peck, 51 F.4th at 890 (citation modified). At bottom, there are no allegations establishing that Officers Ravelo, Figley, Roper, and Pereira knew about, acquiesced in, planned, executed, or otherwise had any meaningful involvement in the alleged excessive force.

Accordingly, the Court dismisses Plaintiff's excessive force claim against Officers Ravelo, Figley, Roper, and Pereira with prejudice.

### E. *Monell* Claim

Finally, the SAC includes the following *Monell* claims under § 1983 by Jade against the City: unconstitutional policy and custom; failure to supervise and discipline; failure to train; and negligent hiring. (Doc. 46 at 20 ¶ 103.)

As noted, § 1983 provides a cause of action against state actors who deprive individuals of their constitutional rights. *See WMX Techs.*, 197 F.3d at 372. A city can be a "state actor" amenable to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693–94 (1978). However, § 1983 does not "impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell*, 436 U.S. at 692). "Instead, in *Monell* and subsequent cases, [the Supreme Court] required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* Such claims are commonly known as "*Monell* claim[s]." *E.g., Lockett v. County of Los Angeles*, 977 F.3d 737, 740 (9th Cir. 2020).

To assert a Monell claim, a plaintiff must prove: "(1) that the plaintiff possessed a

constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No 40*, 130 F.3d 432, 438 (9th Cir. 1997) (citation modified). Ultimately, "there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

In its November Order, the Court dismissed the Plaintiffs' *Monell* claim because Plaintiffs failed to establish that the City was the moving force behind the alleged use of excessive force. (Doc. 43 at 25–27.) That analysis applies with equal force here.

The SAC's only pertinent new allegation is that "[t]he training, policies and procedures that set forth the use of the late-night presence at the neighbor's home and multiple officers with weapons and nightscopes showed a deliberate indifference to the rights of Jade to be free from the excessive force against him." (Doc. 46 at 21 ¶ 109.) This allegation does nothing to correct the deficiencies the Court identified in its November Order. Plaintiffs still offer bare allegations that fail to identify a discrete City policy or action that was the "moving force behind the constitutional violation." *Plumeau*, 130 F.3d at 438 (quoting *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).

Accordingly, the Court dismisses Plaintiffs' *Monell* claim with prejudice. Thus, the only remaining claims in this litigation are: (1) the assault claim against Officer Stover; (2) the excessive force claim against Officer Stover; and (3) the assault and battery claim against Sloat.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED dismissing** the following counts with prejudice: (1) Count One: the assault claims except for the assault claim as to Officer Stover; (2) Count Three: the gross negligence claims; (3) Count Four: the NIED claims; (4) Count Five: the excessive force claims under § 1983 as to Ravelo, Figley, Loper, and Pereira only; and (5) Count Six:

the *Monell* claims under § 1983.

Dated this 1st day of July, 2026.

_____
Honorable Susan M. Brnovich
United States District Judge